Joe **NARANJO** a/k/a Sammy Naranjo, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–05–00199–CR.

Court of Appeals of Texas, San Antonio.

Oct. 11, 2006.

---

Nancy B. Barohn, Kansas City, MO, for appellant.

Scott Roberts, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

### REVISED OPINION ON APPELLANT'S MOTION FOR RE-HEARING

Opinion by SARAH B. DUNCAN, Justice.

We deny the State's motion for rehearing. However, we withdraw our August 30, 2006 opinion and substitute this opinion in its place. Our judgment remains unchanged.

Joe Naranjo a/k/a Sammy Naranjo appeals the trial court's judgment convicting him of theft by appropriating a trailer he knew was stolen and sentencing him to two years in prison, probated. We hold the trial court erred in instructing the jury on the presumption of knowledge contained in section 31.03(c)(6) of the Texas Penal Code; but the evidence is legally sufficient to support a finding that Naranjo had actual subjective knowledge at the time he acquired the trailer that it was stolen. We therefore reverse the trial court's judgment and remand the cause for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

In July 2002, San Antonio Police Detective Dan Sevino conducted a "salvage" inspection of Perfection Collision Center, the premises of which housed both an automobile body shop and Bad Boys Audio. Sevino characterized the body shop as a "family business" involving three brothers— Rudy (the owner), Jesse (the brother in charge), and Joe Naranjo (an employee).

Sevino first encountered Jesse, who seemed "fine" with the inspection. But when Sevino started towards the back of the shop to inspect the vehicles, Rudy immediately tried to close the business and force the officers to leave the premises. In Sevino's experience, this generally occurs when "there is something there they don't want us to find." Because "Rudy ... was becoming a little bit out of control" and because the number of vehicles in the shop was beyond Sevino's expectation, he called for additional officers and continued the investigation.

Initially, Sevino found a custom-painted and stereo/CD equipped jet ski that had had its exterior identification number removed. When Sevino explained that he would have to disassemble part of the jet ski to get to the secondary identification number, Rudy again became upset. Ultimately, Sevino got to the secondary identification number; and Rudy provided title to the jet ski. However, as Sevino moved down the line of vehicles, he came across a trailer whose identification number had been ground down and painted over.

When Sevino questioned Rudy, he said the trailer belonged to his brother Joe. Joe Naranjo admitted the trailer was his but was unable to produce a title. When asked how he acquired the trailer, Joe claimed he had purchased the trailer more than two years before the inspection for $1400 from an unknown individual at a mud race. In stark contrast to Rudy's reaction when told the jet ski would be impounded if he did not produce a title, when Sevino told Joe that he was going to impound the trailer, Joe did not react at all. That struck Sevino as very unusual.

■ Sevino impounded the trailer and several days later chemically raised the identification numbers and traced the trailer back to its original owner, William Weeby, who had reported the trailer stolen approximately one year earlier. Weeby further identified the trailer as his by some damage to the rear end, which Sevino found on the impounded trailer in a subsequent inspection, and by a yellow pin stripe, which Sevino also found on the impounded trailer after applying some paint remover. Weeby later inspected the impounded trailer, identified it as his stolen trailer, and provided the title. Thereafter, Sevino advised Joe Naranjo in a telephone call that it appeared the trailer was in fact stolen and asked Joe to come in and give a more detailed statement regarding his purchase of the trailer. When Naranjo refused to answer any questions or otherwise cooperate with the investigation, Sevino scheduled a seizure hearing and notified both Weeby and Naranjo by certified mail, return receipt requested. Only Sevino and Weeby attended. As a result of the hearing, Weeby was awarded possession of the trailer. Naranjo was charged with theft of the trailer by appropriation, the elements of which are: "(1) a person, (2) with the intent to deprive the owner of property, (3) appropriates property, (4) which is stolen property, (5) knowing it was stolen, (6) by another." *Franklin v. State*, 659 S.W.2d 831, 833 (Tex.Crim.App.1983) (citing *Dennis v. State*, 647 S.W.2d 275 (Tex.Crim. App.1983)); *see* Tex. Pen.Code Ann. §§ 31.03(a)-(b)(1)-(2) (Vernon Supp.2006).

■ At trial, it was undisputed that Naranjo was in possession of a stolen trailer. The only disputed issue was whether he knew when he acquired the trailer that it had been stolen by another. As a general rule, to prove a defendant knew he possessed stolen property, the State must prove not just "knowledge that would have indicated to a reasonably prudent man that the property was stolen" but "actual subjective knowledge." *Dennis*, 647 S.W.2d at 280. However, this element of the offense may be established with the presumption of knowledge contained in Texas Penal Code section 31.03(c)(6)(B), which provides in relevant part as follows:

(6) an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage is presumed to know on receipt by the actor of stolen property that the property has been previously stolen from another if the actor knowingly or recklessly:

. . .

(B) fails on receipt of a motor vehicle to obtain a certificate of authority, sales receipt, or transfer document as required by Chapter 683, Transportation Code, or a certificate of title showing that the motor vehicle is not subject to a lien or that all recorded liens on the motor vehicle have been released....

Tex. Pen.Code Ann. § 31.03(c)(6)(B) (Vernon Supp.2006). But the jury may be instructed on "the issue of the existence of the presumed fact" only "if there is sufficient evidence of the facts that give rise to

the presumption." *Id.* at § 2.05(a)(1). If this evidentiary threshold is met and "the existence of the presumed fact is submitted to the jury," the jury must also be instructed, *inter alia*, "that the facts giving rise to the presumption must be proven beyond a reasonable doubt." *Id.* at § 2.05(a)(2)(A).

At trial, there was no evidence that, when Naranjo purchased the trailer, he obtained "a certificate of authority, sales receipt, or transfer document . . ., or a certificate of title." The trial court's charge assumed the availability of the section 31.03(c)(6)(B) presumption and instructed the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of July, A.D., 2002, in Bexar County, Texas, the defendant, Joe Naranjo, with intent to deprive the owner of property, did unlawfully appropriate stolen property, to-wit: one (1) trailer, by acquiring or otherwise exercising control over said property, . . ., the said property having been stolen from William [Weeby], its lawful owner; and Joe Naranjo acquired said property by means unknown to the grand jurors, knowing that it was stolen by another, then you will find the defendant guilty of theft, as charged in the indictment.
>
> If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty.
>
> You are instructed that appropriation of property is unlawful if it is without the owner['] effective consent, or if the property is stolen and the actor appropriates the property knowing it was stolen by another. An actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage

is presumed to know on receipt by the actor of stolen property that the property has been previously stolen from another if the actor knowingly or recklessly fails on receipt of a motor vehicle to obtain a certificate of authority, sales receipt, or a certificate of title showing that the motor vehicle is not subject to a lien or that all recorded liens on the motor vehicle had been released.

> . . . .
>
> Therefore, if you believe from the evidence beyond a reasonable doubt that Joe Naranjo knowingly or recklessly failed, on receipt of the motor vehicle in question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate of title showing that the motor vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle had been released, it is presumed, and you may find, [ ] that Joe Naranjo knew on receipt of the property that the property had been previously stolen from another. However, you are not bound to so find and even if you do the State must still prove beyond a reasonable doubt each and all of this and the other elements of the offense charged.
>
> If you have a reasonable doubt [ ] that Joe Naranjo knowingly or recklessly failed, on receipt of the motor vehicle in question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate of title showing that the motor vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle have been released, the presumption that Joe Naranjo knew on receipt of the property that the property had been previously stolen from another fails, and you are not to consider the presumption for any purpose.

The jury found Naranjo guilty; and the trial court convicted him of theft by appro-

priation and sentenced him to two years in prison, probated.

On appeal Naranjo argues (1) without the section 31.03(c)(6)(B) presumption, the evidence is legally insufficient to establish that he had actual subjective knowledge when he acquired the trailer that it was stolen by another; (2) the trial court erred in instructing the jury on the section 31.03(c)(6)(B) presumption because neither Perfection Collision nor Naranjo is subject to its record-keeping requirements; and (3) the trial court's section 31.03(c)(6)(B) instruction was erroneous because it failed to inform the jury that it was required to find the evidentiary fact (Naranjo was "an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage") beyond a reasonable doubt before it was authorized to presume the elemental fact (Naranjo had actual subjective knowledge when he acquired the trailer that it was stolen). Because resolution of Naranjo's legal sufficiency complaint requires that we first determine whether a hypothetically-correct charge would have included the section 31.03(c)(6)(B) presumption, we consider his charge issues first. *See Curry v. State,* 30 S.W.3d 394 (Tex.Crim.App.2000).

## APPLICABILITY OF THE PRESUMPTION

Naranjo argues the trial court erred in instructing the jury on the section 31.03(c)(6)(B) presumption because there is insufficient evidence of the evidentiary fact from which the presumption of the elemental fact of knowledge flows, *i.e.,* he was "an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage." We agree.

## Standards of Review

■ Resolving Naranjo's complaint is necessarily a two-step process involving two different standards of review. First, we must ascertain the meaning of section 31.03(c)(6)(B). "The construction to be given a statute is a question of law." *State v. Vasilas,* 187 S.W.3d 486, 488 (Tex.Crim. App.2006). Words not defined in a statute "are to be given their plain meaning," *State v. Holcombe,* 187 S.W.3d 496, 500 (Tex.Crim.App.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 176, 166 L.Ed.2d 41 (2006) , "unless doing so would lead to an absurd result that the legislature could not have intended." *Ex parte Ervin,* 187 S.W.3d 386, 388 (Tex.Crim.App.2005). "In determining the plain meaning of a word, we initially look to dictionary definitions." *Holcombe,* 187 S.W.3d at 500.

Once we have determined the meaning of section 31.03(c)(6)(B), we must then decide whether there is "sufficient evidence" of the evidentiary fact, *i.e.,* Naranjo was "an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage," to submit the section 31.03(c)(6)(B) presumption. *See* TEX. PEN. CODE ANN. § 2.05(a)(1) (Vernon Supp.2006). A jury charge that fails to accurately instruct the jury on the law and its application is erroneous. *Gray v. State,* 152 S.W.3d 125, 127–28 (Tex.Crim.App.2004).

## The Meaning of Section 31.03(c)(6)(B)

There is no dispute that Naranjo, as an employee of Perfection Collision, was "an actor," that is "one that takes part in any affair." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 54 (1984). But the parties vigorously dispute whether, for purposes of

the section 31.03(c)(6)(B) presumption, an automobile body shop is engaged "in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage" and, if so, whether its employees are likewise engaged. We address only the second issue.

■ Certainly an employee is engaged in his employer's business for some purposes.[1] However, maintenance of the records described in section 31.03(c)(6)(B) is a duty imposed only on "metal recyclers" and "salvage vehicle dealers."[2] In oral argument, the State insisted this record keeping duty must also be imposed upon these types of businesses' employees— whether mechanic, janitor, or secretary. In support of its argument, the State referred us to sections 501.091(7) and (17) of the Texas Transportation Code, which define a "metal recycler" and a "salvage vehicle dealer" as "a person" "engaged in the business of" metal recycling or salvage. *See* TEX. TRANSP. CODE ANN. §§ 501.091(7), (17) (Vernon Supp.2006).[3] These statutory definitions are drafted quite broadly. However, section 2302.258(d) of the Occupations Code expressly recognizes a distinction between "[a] salvage vehicle dealer" and "an employee of the dealer" by requiring both to "allow" a peace officer's inspection. *See* TEX. OCC.CODE ANN. § 2302.258(d) (Vernon 2004). We believe that, as reasonable as it is to require both the entity and its employees to "allow" an inspection, it is equally as unreasonable— indeed absurd—to interpret these statutes as imposing the statutory record keeping duties not only on the entities but also on every one of their employees, regardless of

1. *Cf. Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486–87 (Tex.1998) (holding that insurance company employee was engaged in the business of insurance within the meaning of article 21.21 of the Texas Insurance Code because he "personally carried out the transaction that forms the core of [the plaintiff's] complaint"); *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 32–33 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (quoting non-competition agreement prohibiting employee from "directly or indirectly in any capacity either as owner, partner, shareholder, broker, dealer, agent, employee, consultant, or otherwise, engage in [his former employer's] business"); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 795 (Tex. App.-Houston [1st Dist.] 2001, no pet.) (quoting non-competition agreement prohibiting employee from "directly or indirectly, either as an employee, employer, officer, director, consultant, agent, principal, owner or in any other individual or representative capacity engage in a business that is in competition with [his former employer's business]").

2. TEX. OCC.CODE ANN. §§ 2302.001(1) (Vernon 2004) (the terms "metal recycler" and "salvage vehicle dealer" have the meanings assigned by Section 501.091, Transportation Code), 2302.202 (imposing record keeping

duty on "salvage vehicle dealer"), 2302.205 (requiring "metal recycler" to submit ownership document to the Texas Department of Transportation), 2302.252–254, 2302.256 (imposing record keeping duties on "salvage vehicle dealer").

3. At the time Naranjo was alleged to have committed the crime, former articles 6687–2, and 6687–2b defined a "salvage vehicle dealer" as "a person who is engaged in this state in the business of acquiring, selling, or otherwise dealing in salvage vehicles or vehicle parts of a type required to be covered by a salvage vehicle certificate of title or nonrepairable vehicle certificate of title under a license issued by the department that allows the holder of the license to acquire, sell, dismantle, repair, or otherwise deal in salvage vehicles." Act of May 18, 1995, 74th Leg., R.S., ch. 404, §§ 1, 2, 4, 1995 Tex. Gen. Laws 2973, 2974, 2978, 2980, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 4570, 5020, effective June 1, 2003. However, since the versions of these statutes now codified in the Texas Transportation Code are not substantially different, we refer to the codified versions.

whether the statutory record keeping duties are outside an employee's job function and therefore beyond his ability to control. This we may not do. *See Ex parte Ervin,* 187 S.W.3d at 388 (holding that appellate courts are obligated to interpret a statute in accordance with the plain meaning of its language, unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended). We therefore hold that a defendant's status as an employee of an automobile body repair shop—standing alone—is an insufficient basis upon which to submit the section 31.03(c)(6)(B) presumption. *Cf. Davis v. State,* 658 S.W.2d 572, 576 (Tex.Crim.App. 1983) (holding that section 43.23(e) presumption that "[a] person who promotes ... or possesses obscene material ... with intent to promote it ... in the course of his business is presumed to do so with knowledge of its content and character" did not apply to appellant when "[o]outside of his mere presence in a managerial capacity, there is not any circumstantial evidence to link him to the booth, the projector, or the film."); *see and compare Webb v. State,* Nos. A14–89–00832–CR and 14–89–00833–CR, 1990 WL 113759, at *1 (Tex. App.-Houston [14th Dist.] Aug. 9, 1990, pet. ref'd) (not designated for publication) (holding evidence sufficient to establish that Webb was engaged in the business described by section 31.03(c)(6) when investigators, proceeding on information gathered from a confidential informant that Webb was acquiring stolen cars and cutting them up for sale, found on the premises "major component parts with vehicle identification numbers which had been tampered with and vehicles with component part identification numbers which did not correspond to the identification number on the dash plate"). Here, the only evidence of Naranjo's status at Perfection Collision is that he was an employee. Ac-

cordingly, we hold the trial court erred in submitting the section 31.03(c)(6)(B) presumption to the jury.

■ Naranjo objected to the trial court's submission of the section 31.03(c)(6)(B) presumption. Therefore, he need only show "some harm" to obtain reversal. This standard is clearly met here since submission of the presumption permitted conviction without proof of the specific element to which the presumption applied—Naranjo's actual subjective knowledge when he acquired the trailer that it was stolen. *See In re Winship,* 397 U.S. 358, 362–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding requirement that State prove every element of offense beyond a reasonable doubt is constitutionally required).

### CORRECTNESS OF THE INSTRUCTION

Naranjo also argues that, even if the trial court was authorized to submit the section 31.03(c)(6)(B) presumption, its submission was fatally flawed because it failed to inform the jury that it was required to find the evidentiary fact (Naranjo was "an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage") beyond a reasonable doubt before it was authorized to presume the elemental fact (Naranjo had actual subjective knowledge that the trailer was stolen). We again agree.

### *Applicable Law and Standard of Review*

■ As set forth above, if "the existence of the presumed fact is submitted to the jury," the jury must also be instructed, *inter alia,* "that the facts giving rise to the presumption must be proven beyond a rea-

sonable doubt." TEX. PEN.CODE ANN. § 2.05(a)(2)(A) (Vernon Supp.2006). Although Naranjo objected to including an instruction on the presumption in the charge, he did not object to the failure to include the instruction required by section 2.05(a)(2)(A), *i.e.*, "that the facts giving rise to the presumption must be proven beyond a reasonable doubt." We therefore "cannot reverse the conviction absent a finding 'the error is so egregious and created such harm that [appellant] 'has not had a fair and impartial trial.'" *Bellamy v. State*, 742 S.W.2d 677, 685 (Tex.Crim.App.1987).

### The Missing Instruction

■ In *Bellamy*, the Texas Court of Criminal Appeals held the trial court erred in instructing the jury on the presumption of knowledge that second-hand property was stolen under section 31.03(c)(3) without also instructing the jury that it must find "'the facts giving rise to the presumption' beyond a reasonable doubt, and if it has a reasonable doubt as to those facts, 'the presumption fails and the jury shall not consider the presumption for any purpose.'" *Id.* at 683. So it is here. The State argues, however, "[t]he trial court clearly charged the jury in accordance with section 2.05." As support for this argument, the State offers the following mark-up of part of the charge:

Therefore, *if you believe from the evidence beyond a reasonable doubt* that Joe Naranjo knowingly or recklessly failed, on receipt of the motor vehicle in question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate of title showing that the motor vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle had been released, it is presumed, and you may find, [ ] that Joe Naranjo knew on receipt of the property that the property had been previously stolen from another. *Howev-*

*er, you are not bound to so find and even if you do the State must still prove beyond a reasonable doubt each and all of this and the other elements of the offense charged.*

*If you have a reasonable doubt [ ] that Joe Naranjo knowingly or recklessly failed,* on receipt of the motor vehicle in question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate of title showing that the motor vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle have been released, *the presumption that Joe Naranjo knew on receipt of the property that the property had been previously stolen from another fails, and you are not to consider the presumption for any purpose.*

Apparently the State believes the charge was proper because it applies the reasonable doubt standard to the failure to obtain and maintain the required records. This is incorrect. As *Bellamy* illustrates, the charge must apply the reasonable doubt standard to the evidentiary fact. *See Bellamy*, 742 S.W.2d at 683. Here, the evidentiary fact is not whether Naranjo maintained the proper record of title but whether he was "[a]n actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage." Nothing in the court's charge required the jury to make this finding, beyond a reasonable doubt or otherwise.

The State's reliance on *Willis v. State*, 790 S.W.2d 307 (Tex.Crim.App.1990) is likewise misplaced. As the State's quotation from *Willis* illustrates, the *Willis* charge—unlike the charge in *Bellamy* and in this case—instructed the jurors that they could find the elemental fact only if

they first found the evidentiary fact to have been proven beyond a reasonable doubt. *See id.* at 311 ("Unlike *Bellamy's* charge, the charge in this case unequivocally informs the jurors that 'if [the facts giving rise to the presumption] are proven beyond a reasonable doubt, you may find that the defendant knew that the property in question ... had been stolen, if it had been, *but you are not bound to so find.*' ") (emphasis in the original).

■ Pursuant to *Bellamy*, we hold the trial court's failure to instruct the jury pursuant to section 2.05(a)(2)(A) "that the facts giving rise to the presumption must be proven beyond a reasonable doubt" constitutes error. Also pursuant to *Bellamy*, we hold the "egregious" nature of this error is "manifest." *See Bellamy*, 742 S.W.2d at 685. As in *Bellamy*, "[w]hether appellant knew the property he received was stolen was not just one of many contested issues at trial, it was the sole contested issue"; the prosecutor "reread and commend[ed] ... use [of the presumption] to the jury"; and the "jury might well have chosen to resolve [its] uncertainty [on the issue of appellant's guilty knowledge] by ignoring whatever conflict it otherwise perceived in the evidence pertaining to appellant's knowledge, and simply relying on the undisputed fact that he failed to record the statutory information when he acquired the property". *See id.* at 685–86.

### LEGAL SUFFICIENCY

Usually charge error mandates that we reverse the judgment and remand the cause for a new trial. *See id.* But Naranjo argues he is entitled to an acquittal because, absent the improper presumption, there is legally insufficient evidence to establish that he knew the trailer was stolen. We agree Naranjo is entitled to appellate review of his legal sufficiency argument

against a hypothetically-correct charge. *See Curry*, 30 S.W.3d at 403–06.

In *Curry*, the Texas Court of Criminal Appeals held the trial court erred in deleting from its aggravated kidnaping charge the phrase "by using and threatening to use deadly force namely, a firearm" because this phrase "was a manner or means of committing an element of the offence" and thus not surplusage. *Id.* at 403. After finding error in the charge, the court next considered whether the court of appeals erred in measuring the sufficiency of the evidence against the charge actually given rather than a hypothetically-correct charge that included the quoted phrase. The court held that it did, stating as follows:

> If the evidence is insufficient to support Curry's conviction, the remedy is acquittal. That remedy is greater than simply granting Curry a new trial. Curry's sufficiency point of error must be addressed, regardless of the fact that he has prevailed on his point of error concerning an erroneous amendment of the indictment.
>
> . . .
>
> [In *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997),] [w]e explained that a judgment of acquittal should be reserved for those instances in which there is an "actual failure in the State's proof of the crime."
>
> Here, the language at issue is a manner or means of an element of the offense. If the State failed to prove that manner or means, then there was an "actual failure in the State's proof of the crime." So under *Malik*, it follows that this phrase must factor into a sufficiency analysis.

*Id.* at 404–05. We must therefore address Naranjo's sufficiency issue in light of a hypothetically-correct charge—one that instructed the jury to find Naranjo guilty

only if it found that, at the time he acquired the trailer, he had actual subjective knowledge that it had been stolen by another.

### Applicable Law and Standard of Review

 When, as here, the State specifically pleads in the indictment that the accused committed theft by receiving property knowing it was stolen by another and this allegation is incorporated in the court's charge, "unexplained possession of recently stolen property is not sufficient proof of theft." *Chavez v. State*, 843 S.W.2d 586, 588–89 (Tex.Crim.App.1992). But evidence of "unexplained possession of recently stolen property" may nonetheless be a circumstance to be considered in a sufficiency analysis. *See id.* "However, before such rule of law may be invoked by the State, it must establish all of the elements of the rule, namely, it must establish that such possession was personal, recent, unexplained, and involved a distinct and conscious assertion of the property by the defendant." *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex.Crim.App.1984).

 "Generally, the shorter the interval between the theft and the possession, the stronger the inference, although the cases will vary according to such factors as the ease with which such property can be transferred." *Jackson v. State*, 12 S.W.3d 836, 839 (Tex.App.-Waco 2000, pet. ref'd) (citing *Hardage v. State*, 552 S.W.2d 837, 840 (Tex.Crim.App.1977)). If the defendant explains his possession of the stolen property, it is for the jury to determine as a matter of fact whether the explanation is unreasonable or false, which may be shown by circumstantial evidence. *See Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim.App.1977) (a burglary case but citing for this proposition two theft cases, *Smith v. State*, 518 S.W.2d 823 (Tex.Crim.App.

1975), and *Huff v. State*, 492 S.W.2d 532 (Tex.Crim.App.1973), *both overruled on other grounds by Hardesty v. State*, 656 S.W.2d 73 (Tex.Crim.App.1983)).

On appeal, we review the jury's resolution of these factual matters under the familiar legal sufficiency standard. *Simmons v. State*, 109 S.W.3d 469, 472 (Tex. Crim.App.2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Accordingly, in this case, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the disputed fact—that Naranjo, at the time he acquired the trailer, had actual subjective knowledge that it had been stolen by another—beyond a reasonable doubt. *See Simmons*, 109 S.W.3d at 472.

### Slight But Legally Sufficient Evidence

 It is undisputed that Naranjo made a "distinct and conscious assertion" to assert his "personal" right to possess a stolen trailer. And, since it is plainly more difficult to transfer ownership of a trailer, which must be registered, *see* Tex. Transp. Code Ann. § 502.002 (Vernon 1999), than, for instance, a television, a jury could have found Naranjo's thirteen-month possession of the trailer sufficiently "recent" for the State to invoke the "unexplained possession" rule. But, Naranjo argues, the State failed to disprove his explanation of the circumstances of his acquisition of the trailer. This is true. But a jury could reasonably find Naranjo's explanation of his acquisition of the trailer to be unreasonable, if not outright false, since the length of time he claimed to have owned the property—over two years—exceeded the undisputed length of time it had been reported stolen—fourteen months. And, contrary to Naranjo's argument, it is simply immaterial that Sevino agreed Naranjo

may have been mistaken as to how long he possessed the trailer; under the legal sufficiency standard of review, we must view the evidence in the light most favorable to the jury's verdict. Moreover, the State's evidence did not prove the reasonableness or veracity of Naranjo's explanation; and Naranjo offered no evidence to corroborate his claim. *See McElyea v. State,* 599 S.W.2d 828, 829 (Tex.Crim.App. [Panel Op.] 1980) (concluding defendant rebutted "presumption of guilt" based on possession of stolen property because testimony of defense witnesses corroborated), *overruled on other grounds by Hardesty v. State,* 656 S.W.2d 73 (Tex.Crim.App.1983); *Huff v. State,* 492 S.W.2d at 533 (same). In light of these circumstances, we hold a reasonable juror could have rejected Naranjo's explanation and applied the rule of "unexplained possession," so that his guilt might be inferred. And the inference flowing from unexplained possession of recently stolen property is not the only inference of guilt a rational juror could glean from this record.

It is true, as Naranjo argues, that the State adduced no evidence regarding when the trailer's identification numbers had been ground down or when they and the yellow pin stripe had been painted over or that Naranjo was aware of it. But it is undisputed the trailer was in this condition while in Naranjo's possession; and a jury could reasonably infer the grinding and painting had been done by Naranjo in his capacity as an employee of Perfect Collision, an automobile body shop that by definition would have the equipment necessary to perform the grinding and painting functions. Moreover, when Sevino gave Naranjo an opportunity to provide documentary proof or other facts to support his claim, he refused to do so. And, when the trailer was impounded, Naranjo did not appear upset, a circumstance that was unusual in Detective Sevino's experience—

experience that was corroborated by Rudy Naranjo's vehement protest when, minutes before the trailer was found, Sevino threatened to impound the customized jet ski.

It is also true, as Naranjo argues, that the State adduced no direct evidence that Naranjo knew either that he was required to obtain a certificate of title for the trailer or that he was required to register the trailer in his own name within a specific period of time after its acquisition. TEX. TRANSP. CODE ANN. § 502.002 (Vernon 1999). But "the law is clear that a defendant is presumed to know statutory law." *Small v. State,* 809 S.W.2d 253, 256 (Tex. App.-San Antonio 1991, pet. ref'd).

The evidence to support a finding that Naranjo had actual subjective knowledge when he acquired the trailer that it was stolen is admittedly slight. But, considering all the relevant facts and the reasonable inferences they yield, we hold this slight evidence is legally sufficient to support a finding of actual knowledge. Accordingly, Naranjo is not entitled to an acquittal.

### CONCLUSION

Although there is legally sufficient evidence in this record from which a rational jury might reasonably conclude that Joe Naranjo knew when he acquired the trailer that it was stolen, the jury in this case was not instructed that it was required to make this finding. It was instead instructed that it could find Naranjo guilty based on the presumption of knowledge contained in section 31.03(c)(6)(B). Because this instruction was fatally flawed and should not in any event have been given, we reverse the trial court's judgment and remand the cause to the trial court for a new trial.