**Opinion issued July 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00395-CR**

————————————

**JOSHUA WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1390412**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Joshua Williams, of felony theft, and the trial court assessed his punishment at confinement for seven years. In his sole issue on appeal, appellant argues that the evidence was insufficient to demonstrate that he

had possession of the stolen property, as required to prove that he committed the offense of theft.

We affirm.

## Background

On June 4, 2014, at approximately 1:00 in the afternoon, the alarm company of the complainant, Herbert Butrum, notified him that his home had been broken into. The alarm company also notified the police, and officers were promptly sent to the residence. Butrum arrived at his home at approximately 1:30 and observed that someone had "entered through the back bay window" and that the window "had been broken out," leaving glass "shattered all over our den couch." He also observed that glass had been broken out of his back door. Butrum testified that he had a safe and that the keypad had been kicked in; however, nothing was missing from the safe because it could not be opened by disabling the key pad. Butrum determined that an antique jewelry box in which he kept his cufflinks, his iPad, and one of the pillowcases from his bed had been taken from his home.

Meanwhile, approximately six miles from Butrum's home, officer A. Olvera with the Houston Police Department was working undercover at Sharpstown Mall, responding to requests from complainants and generally keeping an eye out for any suspicious activity. That afternoon, Officer Olvera observed two individuals behaving in a manner that he described as suspicious. Officer Olvera stated that he

2

"saw two persons coming out of the mall at a very high rate of speed" and getting into the back seat of a tan Buick sedan, which then "took off very fast." Officer Olvera ran a check on the tan Buick's license plate and learned that there were "city warrants" and "a prisoner's hit" associated with the vehicle. He followed the Buick for a short time and observed the driver commit "a couple [of driving] infractions." He called for a marked unit, and that unit conducted a traffic stop. In court, Officer Olvera identified appellant as one of the individuals who left the mall walking very quickly and rode off in the Buick at a high rate of speed. He indicated that Curtis Perry, appellant's friend, was the other individual.

Officers M. Grossbard and D. Culver were the officers who conducted the traffic stop on the Buick. Officer Culver testified that he was present at the Sharpstown Mall that day because police had received information "that individuals were going to [two pawn shops] at the Sharpstown Mall and they were trying to pawn jewelry items that could be possibly stolen and [Office Olvera, the case agent,] was looking into that information." Officer Culver testified that while he was in the "target area" at the south side of the mall, where the pawn shops were located, Officer Olvera contacted Officer Grossbard and him about suspicious individuals. Based on Officer Olvera's information, he and Officer Grossbard located the Buick and pulled it over.

Officers Grossbard and Culver observed a total of four people in the vehicle, which they determined was registered to appellant's mother. Officer Grossbard identified Hadren Williams, appellant's brother, as the driver of the vehicle, and he observed that appellant was sitting in the rear driver's-side seat. Curtis Perry was the other backseat passenger, and Lorena Jones, appellant's ex-girlfriend, was riding in the front passenger seat. Officers Grossbard and Culver observed that there were "pillowcases and other articles sitting right next to [appellant]," which Officer Grossbard found suspicious based on his knowledge that burglars sometimes use pillowcases in the course of taking property from a home. He also detected a "strong odor of marijuana coming from inside the vehicle," which he believed gave him probable cause to detain all four people and search the Buick.

Officers Grossbard and Culver searched the vehicle and found multiple pillowcases and other items, including several jewelry boxes. Officer Grossbard asked the Buick's occupants whether the pillowcases or their contents belonged to them. Appellant answered "that he didn't know what [Officer Grossbard] was talking about and that it did not belong to him." None of the vehicle's occupants indicated that the property belonged to them or that they owned it—they all indicated that they did not know anything about the pillowcases and other property. Officer Grossbard testified that some of the pillowcases and other items were sitting on the seat "right next to [appellant]" or were "on the floor right next to his

4

feet." The officers also noticed that appellant's hands began to shake while they were searching the Buick, and appellant later complained about having chest pains and was examined by EMS at the scene before being released back to the police.

Officer Olvera approached the Buick after Officers Grossbard and Culver had taken appellant and the other three occupants into custody. Officer Olvera observed "pillowcases full of items" on the floor board where appellant had been sitting and on the back seat next to where appellant had been sitting. Officer Olvera stated that officers also discovered one pillowcase that contained several pairs of gloves. Another pillowcase contained an iPad "that was still receiving messages from the alarm company." He contacted the alarm company and was able to determine that the iPad belonged to Butrum. Butrum arrived at the scene where the Buick had been pulled over and identified the items that belonged to him, including a jewelry box, some cufflinks, and the iPad.

All four of the Buick's passengers were arrested for theft. Officer Grossbard testified that Butrum did not want to risk damaging his iPad by having it dusted for fingerprints. Officer Grossbard further testified that he and the other officers did not believe they would get any usable fingerprints from the other items in the Buick, both because of the types of surfaces involved and because it appeared that the passengers had been using gloves to touch the items. Officer Grossbard further

5

testified regarding why he believed all four people in the Buick were involved in the theft:

> In my experiences on burglary cases, normally when they, what we call a crew of people, when they go and burglarize a house, they use anywhere from three to four to five people. They may use two people as lookouts on the corner, then another two may go in the house and burglarize, so it's never just one or two guys; it's multiple people doing multiple things to successfully complete the burglary. So in this case, it was four people in a car with stolen property from a house that was just burglarized and nobody wanted to acknowledge the fact that those items were theirs, so that tells me that everybody that's in the car is more than likely responsible for it.

He reiterated that the passengers were all in the vehicle together shortly after the burglary occurred and were all within arms-reach of stolen property, including several jewelry boxes and other items.

At trial, the State also presented the testimony of Brittany Jacobs, Lorena Jones's sister. She testified that Jones and appellant had grown up together and had dated in the past. Jacobs also stated that she always saw appellant driving a tan or gold Buick sedan and that she believed it was his car. Jacobs testified that sometime after lunch on the day of the theft appellant called Jones and asked her to come meet him, so Jacobs drove Jones to Sharpstown Mall to meet appellant. Jacobs observed her sister walk up to appellant's Buick only to realize that no one was in the car at that time. Jones then called appellant, and he told her he was in the mall. At that point, Jones went into the mall and Jacobs left. Jacobs stated that that was the last time she saw her sister that day. Jacobs further stated that she

6

knew Curtis Perry was a friend of appellant's, that Hadren Williams was appellant's brother, and that they were known to spend time together.

The jury was instructed that it could find appellant guilty if it found beyond a reasonable doubt that appellant unlawfully appropriated property, including Butrum's jewelry box, iPad, and cufflinks, "by acquiring or otherwise exercising control over [it]." The jury was also instructed on the law of parties and was instructed that it could find appellant guilty if it found beyond a reasonable doubt that "Hadren Williams and/or Curtis Perry and/or Valencia Jacobs also known as Lorena Jones, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over [Butrum's property]" and that appellant, "with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Hadren Williams and/or Curtis Perry and/or Valencia Jacobs also known as Lorena Jones to commit the offense."

The jury found appellant guilty of theft. The trial court assessed his punishment at seven years' confinement. This appeal followed.

## Sufficiency of the Evidence

In his sole issue on appeal, appellant argues that the evidence was insufficient to demonstrate that he had possession of the stolen property.

## A.    Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating that jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the

8

verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

"A person commits [the] offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2014). A person unlawfully appropriates property if "it is without the owner's effective consent" or "the property is stolen and the actor appropriates the property knowing it was stolen by another." *Id.* § 31.03(b)(1)–(2). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a) (Vernon 2011). "A person is criminally responsible for an offense committed by another if," with "intent to

9

promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (Vernon 2011). In determining whether the accused acted as a party, "the court may look to events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and a common design to do the prohibited act." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

If an accused is found in possession of recently stolen property and, at the time of his arrest, fails to make a reasonable explanation showing his honest acquisition of the property, the jury may draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983); *Uyamadu v. State*, 359 S.W.3d 753, 760 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). To support an inference of guilt from the sole circumstance of possession of stolen property, the State must first establish that the defendant's possession was personal, recent, unexplained, and involved a distinct and conscious assertion of right to the property. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). "Generally, the shorter the interval between the theft and the possession, the stronger the inference," although cases will vary based on factors such as the ease with which the property can be transferred. *Naranjo v. State*, 217 S.W.3d 560, 571 (Tex. App.—San Antonio 2006, no pet.).

Merely being a passenger in a vehicle where stolen goods are found is not sufficient to allow an inference of guilt. *See Jackson v. State*, 645 S.W.2d 303, 306 (Tex. Crim. App. 1983) (holding that being passenger in vehicle alone was not sufficient to show personal possession of, or distinct and conscious right to, stolen goods). Nevertheless, circumstantial evidence alone can support a permissive inference of personal possession of recently stolen items. *See Louis v. State*, 159 S.W.3d 236, 247 (Tex. App.—Beaumont 2005, pet. ref'd) (noting that inference of possession was rational when appellant was in close proximity to stolen property).

**B.    Analysis**

Appellant argues that the State failed to present sufficient evidence that he "exhibited personal possession over the property or a distinct and conscious assertion" of right to the property. Appellant argues that his mere proximity to the stolen property, without additional evidence connecting him to the theft, is insufficient. He argues that the State failed to present evidence connecting him to the stolen goods beyond his mere presence as a passenger in the vehicle where Butrum's property was recovered. We disagree.

Here, appellant was arrested after police pulled over the vehicle in which he was a passenger approximately six miles away from Butrum's residence. Appellant and the three other people in the vehicle were spotted by police the same afternoon that Butrum's alarm company reported a break-in at his residence. The

11

vehicle contained all of the items that Butrum reported stolen, including his iPad, which was displaying a message from Butrum's alarm company. Some of the items, including a jewelry box and a pillowcase containing stolen property, were located within arms-reach of appellant.

The record contains sufficient evidence that appellant's possession was personal. Officers testified that a jewelry box was on the seat next to appellant and that one of the pillowcases containing stolen property was right by appellant's feet. The stolen property was in plain view in the vehicle, was proximate to and accessible by appellant, and was found in the enclosed space of the vehicle that appellant frequently drove and in which appellant was a passenger at the time of his arrest. *See Louis*, 159 S.W.3d at 247 (noting that inference of possession was rational when appellant was in close proximity to stolen property); *Markham v. State*, 761 S.W.2d 553, 560 (Tex. App.—San Antonio 1988, no pet.) ("The type of evidence necessary to show that the possession [in a theft case] is personal and involves a distinct and conscious assertion of right to the property is not unlike that which would be used in showing possession in a drug case[.]") (quoting 5 TEX. CRIM. PRAC. GUIDE § 126.01[3]); *see also Evans v. State*, 202 S.W.3d 158, 161–62 & n.12 (Tex. Crim. App. 2006) (holding that "affirmative links" or other evidence beyond mere presence that establishes accused's connection to contraband include whether contraband was in plain view, accused's proximity to and accessibility of

contraband, whether accused owned or had right to possess place where contraband was found, and whether contraband was found in enclosed space).

Officers Olvera, Grossbard, and Culver all testified that there were multiple jewelry boxes and pillowcases containing property found in the Buick and that no one, including appellant, could explain the presence of those items. *See Evans*, 202 S.W.3d at 162 & n.12 (stating that possession of other contraband at time of arrest is also evidence connecting accused to contraband); *see also Barnes v. State*, 520 S.W.2d 401, 403 (Tex. Crim. App. 1975) (holding that unexplained possession of stolen property is sufficient to sustain conviction for theft). The officers also testified that appellant's hands began to shake while they conducted their investigation and that he later complained about having chest pains and was examined by EMS before being released back to the police. *See Evans*, 202 S.W.3d at 162 & n.12 (stating that "whether the defendant made furtive gestures" and engaged in conduct indicating "consciousness of guilt" are additional affirmative links connecting accused with contraband). Thus, the record contains evidence showing that appellant was more than a mere passenger in the car in which police found the stolen property, and a jury could reasonably infer from the evidence that appellant had personal possession of the stolen property and that his possession involved a distinct and conscious assertion of right to the property. *See Sutherlin*, 682 S.W.2d at 549.

Appellant's possession of Butrum's stolen property was also recent and unexplained. *See id.* Butrum's property had been reported stolen the same afternoon that appellant and Perry raised Officer Olvera's suspicion while exiting Sharpstown Mall, approximately six miles from Butrum's home. *See Naranjo*, 217 S.W.3d at 571 (holding that shorter interval between theft and possession creates stronger inference); *see also Alexander v. State*, 340 S.W.2d 493, 494 (Tex. Crim. App. 1960) (holding that accused's unexplained possession of stolen goods within several hours after theft was "recent" and supported conviction for theft); *Bernadett v. State*, 317 S.W.2d 747, 748 (Tex. Crim. App. 1958) (holding that when evidence "clearly shows that the house in question was burglarized by someone," evidence of appellant's unexplained possession of property within forty minutes after theft was discovered was sufficient to sustain jury's verdict). No one in the Buick, including appellant, provided any explanation for the presence of the stolen items in the vehicle. However, Officers Olvera and Grossbard testified that appellant and Perry were leaving the area of Sharpstown Mall where several pawnshops were located, and the officers testified that they had received and were investigating reports that those pawn shops bought stolen jewelry.

Given this evidence, the jury could have reasonably drawn an inference that appellant possessed the stolen items and that his possession was personal, recent, unexplained, and involved a distinct and conscious assertion of a right to the

property.  *See Sutherlin*, 682 S.W.2d at 549; *see also Sorrells*, 343 S.W.3d at 155 (holding that "circumstantial evidence is as probative as direct evidence in establishing guilt" and that "circumstantial evidence alone can be sufficient to establish guilt").

Appellant argues that his failure to use the property for personal gain is an indicator that he had no personal control over it.  Again, we disagree.  Here, appellant was found in possession of Butrum's stolen property the same afternoon Butrum's alarm company reported the break-in, making it unlikely that appellant had time to use the property for his own gain.  The case appellant relies upon to support his assertion, *Christensen v. State*, 240 S.W.3d 25 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd), is distinguishable.

In *Christensen*, the appellant was accused of theft for commingling charity funds with his union's general funds, and this Court considered whether the appellant had used the money for personal gain in examining the evidence demonstrating his intent to commit theft.  *Id.* at 31–32.  This Court concluded that the evidence was insufficient to support the appellant's conviction for theft because there was no evidence that he had the criminal intent to commit theft.  *Id.* at 36–37.  The present case is materially different, both factually and legally.  Here, the evidence established that someone broke into Butrum's home and removed his possessions without his permission, whereas, in *Christensen*, the alleged theft was

committed by misrepresentation during a fundraiser and the commingling of funds. The legal question in *Christensen* was one of *intent*, not, as here, one of possession. Thus, appellant's reliance on *Christensen* is unavailing in light of the evidence demonstrating his possession of the stolen property, as discussed above.

Appellant also argues that the evidence is insufficient because there was no forensic evidence—such as DNA, fibers, or fingerprints—connecting him to Butrum's home or to the stolen goods. He also argues that there were no eyewitnesses or surveillance videos placing him at the scene of the burglary or showing him holding or using the stolen property. However, such evidence is not required to support a conviction. *See Sorrells*, 343 S.W.3d at 155 (holding that circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt).

Finally, appellant argues that the evidence is insufficient because "[t]he sum of the evidence presented by the State was that [he] was found in a car that contained stolen property and that a burglary had occurred at the complainant's residence earlier in the day." Even taking as true appellant's assertion that the evidence demonstrates only that "he was found in a car that contained stolen property" linked to a burglary that occurred earlier that same day, we conclude that the evidence supports appellant's conviction. The jury charge included instructions on the offense of theft and on the law of parties and permitted the jury

to find appellant guilty of theft if he acted with "the intent to promote or assist the commission of the offense" by soliciting, encouraging, directing, aiding, or attempting to aid any of the other three people in the Buick in committing the theft. *See* TEX. PENAL CODE ANN. § 7.02(a)(2).

The behavior of the Buick's occupants both before and after the commission of the offense indicated an understanding between them and a common design to commit theft. *See Ransom*, 920 S.W.2d at 302. Brittany Jacobs testified that sometime after lunch, appellant called Lorena Jones and asked her to meet him at Sharpstown Mall. When Jacobs and Jones arrived at the mall, appellant was in the mall and the Buick, which was registered to appellant's mother and which appellant himself was regularly seen driving, was empty. At around 1:00 p.m., Butrum's alarm company reported a break-in at his residence. Officer Olvera testified that he saw appellant and Perry walking rapidly out of an area of the Sharpstown Mall that had several pawnshops later that same afternoon. Appellant and Perry got into the back of the Buick, with Hadren Williams driving and Lorena Jones in the front passenger seat, and Hadren Williams then drove off very quickly. Officers followed the Buick for a few minutes and then pulled the car over, discovered property belonging to Butrum, and subsequently arrested appellant, Jones, Perry, and Hadren Williams. Thus, very little time elapsed between appellant's call to Jones asking her to meet him, the burglary of Butrum's home,

17

and the recovery of Butrum's property and the arrests, indicating that appellant, his brother, Perry, and Jones acted together to commit the offense.

Furthermore, the evidence indicates that appellant was not a "mere passenger" in the Buick, but that he had established relationships with the other occupants: Hadren Williams is his brother, and Jacobs testified that Perry was a known friend and associate of appellant's and that appellant and Jones had been romantically linked. The four occupants of the Buick likewise demonstrated a common design and understanding among them when all four of them told police officers that they had no idea how the jewelry boxes, pillowcases, and other property came to be in the Buick—none of them claimed ownership of the property or provided any explanation for its presence in the car. Finally, Officer Grossbard testified that, in his experience, burglaries were often committed using a "crew" of three to five people, two of whom would provide a look out, and two or more who would use pillowcases to remove property from a home and quickly escape. Thus, the State presented sufficient evidence that appellant acted with the other people in the Buick based on a common understanding and design to commit the theft, permitting his conviction as party to the offense. *See* TEX. PENAL CODE ANN. § 7.02(a); *Ransom*, 920 S.W.2d at 302.

We hold that the evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that appellant committed theft, either as a primary actor

or as a party.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Adames*, 353 S.W.3d at 859.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).