Rudolph ROBINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–85–214–CR.

Court of Appeals of Texas,
Austin.

April 1, 1987.

Rehearing Denied May 20, 1987.

Robert J. Kuhn, John C. Kuhn, Robert J. Kuhn & Associates, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, GAMAGE and ABOUSSIE, JJ.

ABOUSSIE, Justice.

This is an appeal from a conviction for theft by appropriating property knowing it was stolen by another. Tex.Pen.Code Ann. § 31.03(b)(2) (Supp.1987). Appellant was found guilty by the court, and punishment was assessed at ten years' confinement, probated for ten years, and a $300 fine. We will affirm the judgment.

Appellant managed and operated an automobile salvage yard. On December 18, 1984, while in the yard on personal business, an off-duty Department of Public Safety officer noticed a late-model Oldsmobile in the yard. Investigation by the officer revealed the vehicle was reported stolen. The officer, along with three other peace officers, returned to the yard without a warrant and in the course of conducting an inspection of appellant's inventory discovered the Oldsmobile partially dismantled inside a garage on the premises.

The officers conducted their inspection under the authority of Tex.Rev.Civ.Stat. Ann. art. 6687-2(e) (Supp.1987) which provides:

> ... A peace officer may inspect the inventory on the premises of the automobile salvage dealer at any reasonable time in order to verify, check, or audit the records. An automobile salvage dealer shall allow and shall not interfere with a full and complete inspection by a peace officer of the inventory, premises and records of the dealer.

Violation of the statute is a misdemeanor offense.

Appellant asserts in his first point of error that the trial court erred in admitting

evidence obtained during the inspection of the garage area, which he complains was an unlawful and warrantless search. In support, appellant first argues that the statute in question does not authorize warrantless, *forcible entry* searches, nor those made without consent.

Appellant originally was indicted on February 14, 1985. He filed in that cause a motion to suppress the evidence obtained during the search at the salvage yard, alleging that the officers did not have a search warrant and that probable cause was lacking. Thereafter, appellant was reindicted for the same offense in another cause, and the first suit eventually was dismissed. No written motion to suppress was filed in the second suit, but the docket sheet indicates that a hearing was held on a motion to suppress, whether written or oral. No statement of facts from any such hearing is on file with this Court and cannot be considered on appeal. To have preserved any error, therefore, appellant must have timely objected to the evidence when offered at trial. *Writt v. State,* 541 S.W.2d 424 (Tex.Cr.App.1976).

Appellant did not complain in the trial court that the inspection was conducted by forced entry. The first peace officer to testify regarding the inspection at appellant's garage was Officer Klaus. Appellant objected to his testimony and the evidence found during the inspection on the grounds that the officers did not have a warrant, that appellant did not consent and that the search was outside the scope of the statute. There was no objection that this was a forcible entry. The objection was overruled and the evidence admitted. When Officer Hemphill testified and began to describe the entry to the garage, appellant's attorney stated "same objection as to the search without warrant" and also objected that the officer had not laid a "predicate" as to the reason given appellant for the purpose of the search. The court sustained the objection only as to what purpose was related to appellant at the time of the entry. No ruling ever was obtained as to the objection to the evidence for lack of warrant, even if the stated objection was specific enough to preserve error in a trial

to the court. Hemphill proceeded to testify as to the purpose stated for the visit; the usual procedures followed in an inspection of a salvage yard's inventory in order to verify its records as permitted under the statute; the actual procedures followed at appellant's yard to first check his inventory; the evidence discovered during the inspection; and attempts to obtain the yard's records and specific items for review in order to verify the records, all without further objection.

■ To preserve any error for appeal, appellant has the burden to offer a timely objection at trial on specific grounds and to obtain a ruling by the court as to the objection, or any error is waived. Tex.R. App.P. 52(a) (West 1986). The overruling of what must have been an oral motion to suppress evidence preserved no error for review. Appellant never objected at trial that the "search" was conducted with force, and did not obtain a ruling on his limited objection to Hemphill's testimony, nor did he object to this witness' testimony as to the scope of the inspection and the evidence obtained. An appellant must object in the trial court, obtain a ruling and appeal on the same grounds or any error is waived. *Writt v. State, supra.*

Even if appellant had properly preserved his complaint of unlawful forced search, the evidence does not support his position. Appellant voluntarily permitted the officers to inspect the outside yard and inventory. He claims he then refused to permit a search of the enclosed garage where the stolen car and other damaging evidence was found, that the officers forced their way into the garage and that he did not grant his consent to the "search."

Appellant's complaint is based upon the premise that the inspection inside the garage was a search involving forced entry. The evidence does not substantiate this claim. Officer Klaus testified that when appellant was informed that the officers "needed to check his parts room in the back," appellant's "facial expressions showed concern. His speech was somewhat stuttered and stammered" and appel-

lant "said 'not without—not unless you have the proper authority.'" One of the officers related to appellant the statutory authority and also pointed to the license displayed on appellant's wall and indicated that the right of inspection was "stated on the bottom of that permit." At that point, they "[p]roceeded to walk to the back behind the counter into the garage area." Officer Hemphill testified to essentially the same events, and stated that when he asked appellant whether there was any reason they could not enter, he (appellant) replied, "Well, I'll have to call the boss, you know, and see...." Hemphill's testimony continued:

Q: And did ... did you proceed to ... into the shop part of the....?

A: Yes sir. I walked on through the little aisle there to the right and through the ... through the door into the shop at that time.

Q: Okay. Did he physically obstruct you or refuse you admittance at that time?

A: Not at that time, sir.

The officers walked into the garage and immediately saw the partially dismantled stolen vehicle in plain sight. They were never able to verify from his records that this was part of appellant's inventory.

In construing a similar federal statute, the United States Supreme Court has held that where a federal statute allows officials to enter and inspect the premises of retail liquor vendors, and also provides a fine for refusal of entry, officials could not use force to enter the premises without a warrant. *Colonnade Catering Corporation v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). In *Colonnade*, when the manager of a retail liquor dealership refused to open a locked store room for inspection, federal agents broke the lock and entered, finding incriminating bottles of liquor within. While the court upheld the validity of the statute permitting warrantless inspections of the premises of regulated businesses, the court held that the exclusive recourse for refusal was provided by the statute, and a forced entry without a warrant was prohibited. *Id.* See also *Poindexter v. State*, 545 S.W.2d 798 (Tex.

Cr.App.1977). Similarly, forced entry is not permissible under art. 6687–2.

On the other hand, where federal agents cited to the owner the statutory authority for their inspection and the defendant unlocked a store room, the ensuing inspection was clearly valid. *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). In *Biswell*, the authorities sought to enter the premises of a firearm's dealer and inspect his inventory and records pursuant to § 923(g) of the Gun Control Act of 1968. The dealer objected and demanded a search warrant. When the agents cited to the dealer their statutory authority to inspect the store room, the dealer unlocked the door and did not obstruct the entry. The court held that the warrantless inspection provided by the statute was valid, and that this particular inspection was valid since it did not involve unauthorized force as was present in *Colonnade, supra*. As in *Biswell, supra*, no physical force, obstruction or breaking was involved in entering appellant's garage area.

■ The appellant further argues that the search was invalid, as the inspection of the garage was made without his consent. The court in *Biswell, supra*, held that consent is not necessary, since the statute provides authority to inspect the premises. As stated by the U.S. Supreme Court, those engaged in highly regulated businesses are aware of the government supervision and in effect consent to the restrictions by engaging in the business. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). A statutory, regulatory search may be valid even though conducted without consent, so long as the officers do not use physical force for entry. If force is required, however, authorities are relegated to obtaining a warrant and pursuing criminal sanctions as provided by the statute. *Biswell, supra; Colonnade, supra*. Arguably, appellant permitted the officers to enter the garage, and certainly no force was indicated in entering appellant's garage. The door apparently was unlocked or open, and the officers simply walked in.

■ Appellant's third argument in support of his point of error is that the officers acted outside the scope of authority permitted by art. 6687–2. Appellant claims that the inspection was not performed in order to verify or check his business records, and since the records were never inspected, the search was outside the scope of the statute and, therefore, unauthorized. Appellant cites no authority for this proposition and the evidence indicates otherwise. Officer Hemphill and others testified that appellant's records were requested, but the officers were told the bookkeeper had them and that specific items requested would be obtained. No records ever were provided by appellant for inspection, despite requests on several additional occasions. As noted by the Texas Court of Criminal Appeals, with respect to pawnshop inspections, the State's supervision of pawnshop activities and inspection of pawnshop business records is justified to detect stolen property and prevent theft. *Kipperman v. State*, 626 S.W.2d 507, 511 (Tex.Cr.App. 1981). In a similar case, another court of appeals has held that officers could make an inspection of vehicles at a salvage yard pursuant to art. 6687–2(e) without a warrant when they had been informed that stolen vehicles were on those premises and being stripped. *Guerra v. State*, 712 S.W.2d 217 (Tex.App.1986, pet. pending). Article 6687–2(e) permits officers to inspect a salvage dealer's inventory to verify the dealer's records. If the dealer does not have records to verify his inventory, the statute has served its purpose. The fact that a dealer fails to keep records or does not have the proper records should not insulate him from the requirement to submit to regulatory inspections. The officers had statutory authority to inspect the inventory on the premises and pursuant to their inspection, stolen items were discovered. For the reasons stated, appellant's first point of error is overruled.

Appellant complains in his second point of error that the evidence was insufficient to support a finding of guilt under § 31.-03(b)(2).

■ In determining the sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing the evidence most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex.Cr.App.1983) (opinion on state's motion for rehearing). In a circumstantial evidence case, if the evidence reasonably supports an inference other than appellant's guilt, a finding of guilt beyond a reasonable doubt is not a rational finding. *Carlsen, supra.*

■ Appellant argues that the evidence was insufficient to establish that appellant exercised control over the stolen automobile in question. Where stolen property is found on premises to which several persons have access, joint control over the premises with others will not warrant an inference of guilt. *Hayes v. State*, 464 S.W.2d 832 (Tex.Cr.App.1971). In such situations, the test is whether the appellant asserts ownership over the stolen property. *Id.* The evidence indicates that (1) appellant was the manager and operator of the salvage dealership; (2) that the stolen vehicle was dismantled on the premises; and (3) that the appellant himself had sold the front end of the Oldsmobile. We hold these facts were sufficient to establish that appellant was in possession of the stolen property and asserted ownership and control over the property.

■ Appellant further urges that the evidence was insufficient to show that appellant had knowledge that the car was stolen. Proof of knowledge is an essential element of the crime of theft by possession. *Ehrman v. State*, 580 S.W.2d 581 (Tex.Cr. App.1979); *Pool v. State*, 528 S.W.2d 255 (Tex.Cr.App.1975). To prove theft under Tex.Pen.Code Ann. § 31.03(b)(2), the State must prove among other elements that the appellant appropriated property, exercised control over the property, with the intent to deprive the true owner of the property and knew the property was taken without the owner's consent. "Knowing the property

possessed was 'stolen by another' is merely a subset of knowing the possession is 'without the owner's consent.' " *McClain v. State,* 687 S.W.2d 350, 354 (Tex.Cr.App. 1985). Unexplained personal possession of recently stolen property can support the conclusion that one in possession committed the actual theft but does not justify a conclusion that one received the stolen property with knowledge that it was stolen by another. *Hynson v. State,* 656 S.W.2d 460 (Tex.Cr.App.1983); *Muniz v. State,* 663 S.W.2d 660 (Tex.App.1983, no pet.). Such possession is some evidence, which when coupled with other significant facts and circumstances, may justify an inference of knowledge that the property was stolen by another. *Hynson v. State, supra* at 462; *Hoover v. State,* 707 S.W.2d 144 (Tex.App. 1986, no pet.). Thus, while appellant's possession of the stolen Oldsmobile a few days after it was reported stolen was not by itself sufficient to justify a conclusion that appellant appropriated the vehicle with knowledge that the car was stolen, the sum of the evidence is sufficient to support the judgment of conviction.

▇▇▇ Appellant never produced any records he now implies were available, and produced no record title to such automobile, despite requests that he do so. Even though appellant had no record title to the automobile, he was in the process of dismantling the car when the officers conducted their search. According to the testimony of Wallace Truman Ray, appellant had personally sold Ray the front end of the stolen Oldsmobile, and had accepted a check in payment. Before any car can be dismantled, the owner last named in the certificate of title must surrender such title to the Department of Public Safety. Tex. Rev.Civ.Stat.Ann. art. 6687–1 § 37(a) (1977). No motor vehicle may be disposed of at subsequent sale unless a certificate of title is transferred from the seller to the buyer. Tex.Rev.Civ.Stat.Ann. art. 6687–1 § 33 (Supp.1987). Since the law in Texas is clear that one selling or dismantling an automobile must have a proper certificate of title, absence of such a certificate of title is a factor which could be considered by the court. It was also shown by the State that

engine parts from other automobiles stolen from the same rental agency were found in the garage where the Oldsmobile in question was found. Evidence that the defendant has engaged in similar recent transactions is admissible to show knowledge. Tex.Pen.Code Ann. § 31.03(c)(1) (Supp. 1987). Likewise, possession of other stolen goods also is admissible to show knowledge by defendant. *Barnes v. State,* 503 S.W.2d 267 (Tex.Cr.App.1974); *see generally Potter v. State,* 481 S.W.2d 101 (Tex.Cr.App. 1972).

Appellant's possession of other stolen goods, the fact that appellant was in the process of dismantling a late-model Oldsmobile in apparently good condition, had sold the front end of the Oldsmobile, and could not produce record title to the automobile, along with the appellant's possession of the stolen automobile, are other significant factors sufficient to justify the conclusion that the appellant knew the automobile to be stolen.

▇▇▇ Appellant further argues in support of his second point of error that since a "reasonable explanation" was given for his possession of the stolen Oldsmobile, the appellant cannot be convicted solely on the circumstantial evidence of possession alone. Appellant's argument is misplaced. Personal possession of recently stolen property is sufficient circumstantial evidence to support a conviction of theft of the property itself, unless the defendant offers a reasonable and unrefuted explanation of his possession. *McElyea v. State,* 599 S.W.2d 828 (Tex.Cr.App.1980); *Smith v. State,* 518 S.W.2d 823 (Tex.Cr.App.1975). As discussed above, however, possession alone cannot support a conviction for theft by receipt under Tex.Pen.Code Ann. § 31.-03(b)(2). Such an inference was not and could not solely be relied upon by the State to support appellant's conviction. Other significant factors must exist, and the court properly could have found that they did exist under the evidence.

▇▇▇ Additionally, even if appellant's argument were applicable in this case, the "explanation" offered was not sufficiently

reasonable and unrefuted. Officer Hemphill stated on direct examination that appellant's employee reported that appellant bought the car with a bank draft. Appellant argues that since there is evidence that the automobile was purchased with a bank draft, it can be inferred that the appellant would not receive title to the vehicle until the draft cleared the bank, thus "reasonably explaining" appellant's lack of legal title. This explanation did not come from direct evidence offered by appellant, as is required, nor does this explanation establish the legal acquisition of the property. *See McElyea, supra; Smith, supra; Huff v. State,* 492 S.W.2d 532 (Tex.Cr.App. 1973). Further, appellant never produced any records of the alleged bank draft, just as appellant never produced any record title of the Oldsmobile. The State offered evidence that appellant was dismantling the car, had sold a portion of the car, and was in possession of other stolen automobile parts. Thus, the explanation appellant attempts to rely upon could not be said to be reasonable and unrefuted. Appellant's second point of error is overruled. Accordingly, the judgment of the trial court is affirmed.