**Albert Jerome WALLACE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00538–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 27, 1991.

Discretionary Review Refused
April 8, 1992.

Kenneth P. Mingledorff, Houston, for appellant.

John B. Holmes, Dist. Atty., Carol Cameron, Asst., Houston, for appellee.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, Albert Jerome Wallace, guilty of theft by receiving stolen property over the value of $20,000. The jury found two enhancement paragraphs true and assessed punishment at 50–years confinement. We affirm.

In his first point of error, appellant asserts the evidence is insufficient to support a conviction for theft by receiving because the State failed to prove appellant knew the property he possessed was stolen.

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the entire body of evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159

(1988). The standard of review is the same for both direct and circumstantial evidence. *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim.App.1991); *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984).

The indictment charged that appellant on or about October 16, 1989, did then and there unlawfully appropriate by acquiring and otherwise exercising control over stolen property, namely, two hundred rings, twelve bracelets, nine charms, eight necklaces and twenty-eight chains, of the value of over twenty thousand dollars, owned by PAT HOYLAND, with the intent to deprive the owner of the property and knowing the property to be stolen by another whose name is unknown.

The evidence, viewed in the light most favorable to the judgment, is as follows:

On October 16, 1989, police officer W.R. Elsbury, assigned to a repeat-offender task-force, received information from a confidential informant that appellant was in possession of stolen property. Elsbury located appellant at a used car lot on Telephone Road and Loop 610, based upon the informant's description of appellant and appellant's truck. Elsbury set up surveillance of appellant, and observed appellant put a boot box into appellant's truck.

Elsbury, along with other unmarked police cars, followed appellant as he drove down Telephone Road. The police boxed appellant in at a traffic light, one car in front of him and one car behind him. The officers, all in plain clothes, jumped out of their unmarked vehicles with their guns drawn and identified themselves as police. Appellant unsuccessfully tried to flee by putting his vehicle in reverse. An officer reached into the vehicle, turned the ignition off, and removed the keys. The boot box was on the front seat with the lid half off, and the officers saw that it was full of jewelry. Appellant was placed under arrest for possession of stolen property.

Officer Shelton, also with the repeat-offender's task-force, inventoried the jewelry. The jewelry included 200 rings, several of which were class rings, 12 gold chain

bracelets, nine charms, eight necklaces, and 28 gold chains. Several of the pieces had store tags on them, indicating an inventory or control number, but no store name or identification. One ring was a 1987 University of Houston Clear Lake class ring, with the name Michael C. Price engraved inside it. Shelton located Price and found that Price had pawned the ring at Easy Loan Pawn Shop. Shelton contacted the pawn shop and learned it had been burglarized on October 14, 1989, two or three days before appellant's arrest.

Hoyland, the pawnshop owner, came to the police station and identified the jewelry as some of the pieces taken in the burglary. The majority of the store tags on the jewelry were in Hoyland's handwriting.

Defense witness, James Thomas Richardson, testified that he met appellant in August or September of 1989, when they were both working for O'Connor McMahon, removing asbestos. They worked together for three or four weeks, and then Richardson did not see appellant again until one day in the middle of October, when they happened to meet at a Stop–N–Go near Gulfgate Mall. Richardson testified he had the jewelry with him, and he had stopped to buy cigarettes. Richardson said he had been trying to "fence" the jewelry and had been unsuccessful at locating his usual sources. Richardson testified:

Q: When you approached Mr. Wallace with the box or with the jewelry, what was said, if anything?

A: I saw him at the store, I asked him if he'd get rid of some jewelry for me. He said a place where he was buying his truck from, they had a sign out there that they was buying gold, you know?

Q: Yes, sir. All right. Did he tell you anything about where the place was?

A: No, sir, he didn't.

Q: Did he ask you anything about the jewelry or the box?

A: Yes, sir.

Q: What did he ask you?

A: He asked me a couple of times if it was stolen and naturally I said no, you know.

On cross-examination, Richardson explained how he had obtained the jewelry from a person he met while in jail. He said *he* had a good idea the jewelry was stolen, but he did not ask his friend any questions, for that very reason. The prosecutor asked him:

Q: What made you think the defendant could help you fence this merchandise?

A: I just asked to see well, you know, to see what he would say. I didn't know whether he could or not. All he could do was say no, either yes or no, one of the two.

Q: Did you have any reason to believe this defendant could fence merchandise?

A: No, sir, I didn't.

Q: Had you had dealings with the defendant before of this type?

A: No, sir, I hadn't. I asked him if he knew where I could get rid of some jewelry.

Q: I see. What kind of deal did you make with this defendant to fence the jewelry for you?

A: I told him I would give him 20 percent. He said wherever he bought that truck from, that they had a sign up there that they bought gold jewelry and stuff, you know.

Q: Did he look in the box?

A: No, sir.

Q: But he took the jewelry?

A: I didn't give him the opportunity to look in the box.

Richardson testified he left after placing the box in appellant's truck, and the next time he heard from appellant was after appellant had been arrested. Richardson testified he had served time in prison for felony convictions, but he had pled guilty each time and had not been tried before a jury because, "I don't get up there and try to say something that ain't right."

Appellant did not testify at the guilt-innocence phase. Appellant asserts that the testimony of his witness, Richardson, established that appellant did not know the jewelry was stolen and the State offered no evidence to negate that testimony. There-

fore, appellant argues, the evidence is as consistent with innocence as with guilt, and thus is insufficient to support his conviction.

The jury charge included the following instruction:

Before you would be warranted in convicting the defendant of theft by receiving stolen property, it must be established by the evidence beyond a reasonable doubt:

(a) that Pat Hoyland was the owner of the said property;

(b) that the defendant, on or about the date in question, exercised control over it;

(c) that at the time the defendant exercised control over the property, if he did, it was stolen property;

(d) that the defendant exercised control over the property with intent to deprive the owner of such property;

(e) that at the time the defendant exercised control over the property he knew it was stolen property;

(f) that the defendant knew, at that time, that the property had been stolen by another person; and

(g) that the property, when the defendant exercised control over it, if he did, was of a value of over twenty thousand dollars.

If you have a reasonable doubt as to whether any one or more of these essential elements have been established, then the defendant is entitled to be acquitted.

The evidence showed appellant was given a large amount of jewelry by a mere acquaintance during a chance meeting in front of a Stop–N–Go. Although the jewelry was worth more than $20,000.00, the acquaintance gave the 257 items of jewelry to appellant without requiring any sort of receipt or security or payment. The jewelry included over 200 rings, some of which were class rings from different schools and different years, and they had different names or initials inscribed in them. Several of the pieces also had store tags on them. If appellant could help his acquaintance "get rid of the jewelry," appellant would get 20 percent of the cash paid for the jewelry. Appellant was observed leaving the office of a used car lot where there was a sign in the window that said, "We buy gold." Appellant was carrying the boot box, and put it in his truck. When appellant was stopped by the police a short while later, he attempted to flee.

In our opinion, the jury could have reasonably concluded that appellant looked in the boot box and was aware of its contents. We find the conditions under which appellant received the jewelry, the amount, type and condition of the jewelry in the box, and appellant's actions after he got the box, constituted sufficient evidence for the jury to conclude, beyond a reasonable doubt, that appellant knew the jewelry was stolen.

We overrule appellant's first point of error.

■ In his second point of error, appellant asserts the trial court erred during the guilt-innocence phase by admitting the testimony of Michael Rihn, appellant's parole officer, regarding statements made by appellant to Rihn, because the statements were made while appellant was in custody, were not preceded by the required statutory warnings, were not voluntary statements, and were not used for impeachment.

Although, at the start of Rihn's testimony, appellant asked for a bench conference regarding an objection he may have had, the record does not include a transcription of the bench conference. After the off-the-record bench conference, the trial court stated: "Your objection will be overruled." There is nothing in the record before us to show which part of Rihn's testimony appellant objected to, or the grounds he stated for his objection. Appellant has failed to preserve his complaint for appellate review. TEX.R.APP.P. 52(a).

We overrule point of error two.

We affirm the judgment.