COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MAGDALENA MORALES, | § | No. 08-06-00067-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 171st Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 20050D02077) |
| | § | |

**O P I N I O N**

This is an appeal from a conviction of theft of property valued at $100,000 or more but less than $200,000. We affirm.

Officer David Hernandez of the El Paso Police Department was assigned to a tactical unit in October of 2004 that was investigating burglaries of habitations and businesses, thefts of construction equipment, and all-terrain vehicles (ATVs). About a year earlier, the police had received a tip implicating the Moraleses and tactical units began surveilling homes at 222 Pasodale and 114 Gaspar.

On October 5, 2004, Officer Hernandez, driving by114 Gaspar, noticed two trailers loaded with heavy machinery equipment, and on a second drive-by saw a cement mixer, ladders, and an ATV. He called in for additional surveillance units. He was joined by Officer Jesus Hernandez and Officer Minjarez. Officer David Hernandez saw Mr. Jesus J. Morales securing and moving some property on a trailer with an unknown Hispanic male. The two men got into a Dodge Durango that was hitched to one of the trailers. The Durango drove off with a trailer

loaded with ladders, gym equipment, cement mixer, and other items. Two police units followed the Durango to 222 Pasodale, where the pickup and trailer briefly parked in the yard. When the pickup and trailer left the Pasodale house surveillance was taken over by Sergeant De Avila in an unmarked car.

Officer Hernandez testified that he waited at 222 Pasodale. He saw Mr. Morales arrive with his wife. Then the officers saw a van arrive and the van driver talking to Mr. Morales. Mr. Morales and the driver then hitched what the officers thought to be a generator to the van. Officer Hernandez alerted other units that the van was leaving the premises with heavy equipment. Officer Hernandez followed. When the van failed to signal a turn, a marked police car was alerted to stop the van for the traffic offense. Sergeant Briones stopped the van on Loop 375. The "generator" was actually a welder. He obtained identifiers from the welder to see if it had been reported stolen. The driver of the van, Mr. Carmona, was arrested for possession of stolen property.

Sergeant Briones was then instructed to go to the 9000 block of Alameda, where he stopped Mr. Jesus Morales and his father. Sergeant Briones told them that Mr. Morales was being detained for investigation of a theft.

As he was placing Mr. Jesus Morales in the back of his car, he was approached by Magdalena Morales and Leonor Morales, Mr. Morales' sisters. The sisters asked about the stop, and Sergeant Briones explained to them why the stop occurred. The sisters asked about how their father was doing. Sergeant Briones then learned from Magdalena that she resides at 114 Gaspar. Magdalena told him that she was the owner and in control of the residence, and lived there with her father and mother. Sergeant Briones then asked for consent to search for possible

stolen items at her residence, which she gave but only as to the outside of her house. She also stated that there was no stolen property there, and that whatever was outside was bought by her brother at swap meets for which she had receipts. Sergeant Briones filled out a consent to search form, which was witnessed by her sister and Officer Hernandez. Magdalena, Lorena, and their father drove to 114 Gaspar in their own car while the officers went in their cars. After arriving at the address, Sergeant Briones met with the other officers there, and advised them of the consent to search the outside of the property. Sergeant Briones asked Magdalena for the receipts she had mentioned, so they could take a look at them. The officers began searching the exterior, and found some stolen property at which point they paused the search, to acquire a search warrant for the entire property. A search warrant was obtained, and the inside and outside of the residence on Gaspar were searched. A search warrant was also executed at the Pasodale residence, and property was collected from inside and outside the house at this location as well.

Jesus J. Morales, Magdalena Morales, Baudelio Morales, Jesus Morales, Erick Morales, Leonor Morales, Sylvia Morales, Lorena Morales, Leonor Morales, Lorena Morales, and Oscar Miramontes were all indicted with one count of theft over $100,000 (aggregated) and one count of engaging in organized crime. At trial, the State presented more than thirty complaining witnesses who testified they had been a victim of theft, indicated what was taken, identified their property in a photo taken either at 114 Gaspar or 222 Pasodale, that they did not know who had stolen it, and none of the defendants had their consent to have the property at either location. The State also introduced evidence that Jesus J. Morales was a co-owner of 222 Pasodale.

After the State rested, the trial judge entered a directed verdict for all the defendants regarding the engaging in organized crime charge, and a directed verdict for the theft charge for

all the defendants except Jesus J. Morales and Magdalena Morales.

During jury deliberations, the original trial judge was not present. However, the original trial judge would provide responses to the jury's questions, and the presiding judge would rule on any objections the attorneys made to the response to the jury. The jury submitted a question as to whether there was a plea bargain for the defendants who were no longer a part of the trial. The answer provided by the judge was "[y]ou are only to consider the evidence admitted in this case." The jury let the court know through the bailiff that they had reached a conclusion on one cause, but were deadlocked 10-2 on the other. The instruction provided by the original trial judge was "[y]ou must continue to deliberate with a view of reaching a unanimous verdict in both cases." The jury asked to recess for the day, and consider it anew in the morning when they would more likely have a fresh outlook. The court responded that they could take a fifteen minute break, but must remain together, and would then continue deliberations.

Appellant was found guilty of theft by the jury. She was sentenced to five years' confinement suspended for five years' community supervision. Jesus J. Morales was sentenced to eight years' confinement after being found guilty of theft.[1] Appellant raises twenty-one issues on appeal.

In Issues One and Two, Appellant contends the evidence is legally and factually insufficient to establish beyond a reasonable doubt that the items were appropriated without the effective consent of the owners. In Issues Three and Four, Appellant contends that the evidence is legally and factually insufficient to establish beyond a reasonable doubt that the value of the

---

[1] Jesus J. Morales has appealed that conviction in a companion to this case. *See Morales v. State*, 08-06-00068-CR (Tex.App.--El Paso January 30, 2009, no pet.h.).

stolen items was in the range of $100,000 to $200,000.

In assessing the legal sufficiency of the evidence to support a criminal conviction, under *Jackson v. Virginia*, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Crim.App. 2007), *citing Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) and *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Evidence that rationally supports a verdict of guilt beyond a reasonable doubt, under the *Jackson v. Virginia* legal sufficiency standard, can still be factually insufficient. *Rollerson*, 227 S.W.3d at 724. Evidence is factually insufficient if the conviction is clearly wrong and manifestly unjust or the finding of guilt is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). Both legal and factual sufficiency standards require the reviewing court to consider all of the evidence. *Rollerson*, 227 S.W.3d at 724. A legal sufficiency review requires the court to give deference to the jury's credibility and weight determinations while a factual sufficiency review allows the court to substitute its judgment for the jury's on these questions, albeit to a very limited degree. *Id*., *citing Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). The question we must consider under a factual sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone is greatly outweighed by contrary proof. *Johnson*, 23 S.W.3d at 11.

A person commits the offense of theft if he unlawfully appropriates property with intent

-5-

to deprive the owner of property. TEX.PENAL CODE ANN. § 31.03(a)(Vernon Supp. 2008).

Unlawful appropriation of property occurs when:

(1)     it is without the owner's effective consent;

(2)     the property is stolen and the actor appropriates the property knowing it
        was stolen by another; or

(3)     property in the custody of any law enforcement agency was explicitly
        represented by any law enforcement agent to the actor as being stolen and
        the actor appropriates the property believing it was stolen by another.

TEX.PENAL CODE ANN. § 31.03(b).

Theft is a second degree state felony if the value of the property stolen is $100,000 or

more but less than $200,000. TEX.PENAL CODE ANN. § 31.03(e)(6). A person is criminally

responsible as a party to an offense, if the offense is committed by his own conduct, by the

conduct of another for which he is criminally responsible, or by both. TEX.PENAL CODE ANN.

§ 7.01(a)(Vernon 2003). A person is criminally responsible for an offense committed by another

if, with intent to promote or assist the commission of the offense, he solicits, encourages, directs,

aids, or attempts to aid the other person to commit the offense. TEX.PENAL CODE ANN.

§ 7.02(a)(2). In determining, whether the accused acted as a party, the court may look to events

occurring before, during, and after the commission of the offense and may rely on actions of the

defendant that show an understanding and a common design to do the prohibited act. *Ransom v.*

*State*, 920 S.W.2d 288, 302 (Tex.Crim.App. 1994).

Appellant argues that the State only presented evidence that she resided at and was a

titleholder of 114 Gaspar, El Paso, TX where some of the stolen property was located, she tried

to intercede on behalf of her brother, and she claimed to have receipts for the items on the

property. Appellant contends the evidence showed that several others were living at the residence, making possession of the premises joint, and thus legally insufficient to prove control over the stolen property and convict under the statute. Appellant points us to *Robinson v. State*, which held that where stolen property is found on premises to which several persons have access, joint control over the premises with others will not warrant an inference of guilt. *Id*., 728 S.W.2d 858, 862 (Tex.App.--Austin 1987, no pet.). In such situations, the test is whether appellant asserts ownership over the stolen property. *Id*.

The State argues that they presented evidence that Appellant exercised control over the property through her statements that she owned and was in control of the 114 Gaspar property, and the jury could reasonably infer she exercised control over the stolen property and convict based on that evidence. The State presented evidence that Mr. Morales was observed personally moving some of the property when he took a trailer loaded with items from the residence at 114 Gaspar to his home at 222 Pasodale and when he attached the welder to Mr. Carmona's vehicle. There was also evidence presented that Appellant told the officers that Mr. Morales had purchased all the items on her property, 114 Gaspar, at swap meets, which implies that the property was his or at least under his control. Appellant argues that the heavy machinery was never specified or identified other than as "some property," and was not identified as stolen, and that a lot of property was returned to the Morales family because it was not stolen property. Mr. Morales admitted that there was evidence that he exercised control of a Lincoln Welder, but a Lincoln Welder was returned to the Morales Family. Property was returned to the Morales family, however, Officer Hernandez testified that confiscated property is returned to where it was taken from if it cannot be verified as stolen, no one claims the property as stolen, or a person is

-7-

unable to identify his property by some identifier on the item.

The State also argues that the evidence presented was sufficient to support that Appellant knew the property was stolen. The State directs us to the holding in *Chavez v. State* that evidence of the defendant's recent, unexplained possession of stolen property is a sufficient circumstance, in and of itself, to support a conviction for theft. *Id.*, 843 S.W.2d 586, 588 (Tex.Crim.App. 1992). Appellant argues that the evidence presented fails to meet the requirements to allow for an inference of guilt from possession alone. The possession must be personal, recent, unexplained, and must involve a distinct and conscious assertion of property by defendant. *McKnight v. State*, 399 S.W.2d 552, 555 (Tex.Crim.App. 1996). The State argues that Appellant's possession of the items was recent. Appellant was in possession of items that require title documentation that had been stolen within thirteen months of the date they were found at the Morales' residences. Five motorcycles and an all-terrain vehicle all of which had been reported stolen between October of 2003 and December 2003 were found at the Morales' residences in October of 2004 without title documentation. Whether possession was recent is made case by case based on the facts and the ease of transferability. *See Naranjo v. State*, 217 S.W.3d 560, 571 (Tex.App.--San Antonio 2006, no pet.). The shorter the period of time between the taking of the property and defendant's possession of the property, the stronger the inference that the defendant knew the property was stolen. *Id*. The court in *Naranjo* found that a trailer, which requires title documentation, stolen thirteen months prior to being found in the defendant's possession was sufficiently recent to invoke the unexplained possession rule. *See Naranjo*, 217 S.W.3d at 571. If the defendant explains possession of the property, the record must demonstrate the explanation is false or unreasonable. *Adams v. State*, 552 S.W.2d 812, 815 (Tex.Crim.App.

1977). Whether the defendant's explanation is false or unreasonable is an issue to be decided by the trier of fact, and the falsity of the explanation may be shown by circumstantial evidence. *Id.* The defendant's explanation must be made when he is first called upon directly or circumstantially to do so. *Hardesty v. State*, 656 S.W.2d 73, 77 (Tex.Crim.App. 1983). Appellant told the officers that the items had been purchased at swap meets by Mr. Morales, and she had receipts for the items. The police officers gave Magdalena an opportunity to show the receipts she said she had for the property, but she was unable to produce them, then or any time since. The jury could have reasonably found the explanation to be false or unreasonable. *See Naranjo*, 217 S.W.3d at 571.

Knowledge that property was stolen can be shown by circumstantial evidence. *Chudleigh v. State*, 540 S.W.2d 314, 317 (Tex.Crim.App. 1976). Circumstantial evidence offered during the trial included testimony that some of the items had been altered to prevent property from being identified. The alteration was effected by painting items a different color, removing decals, and painting over identification numbers, which was even done to a welder that had been reported stolen earlier that day. Additionally, the presence of multiple stolen items and the sheer amount of stolen items on the properties allows the jury to infer that Appellant knew the items were stolen along with the fact that Appellant had no documentation of ownership for any of the items. *See e.g., Wallace v. State*, 822 S.W.2d 290, 293 (Tex.App.--Houston [1st Dist.] 1991, pet. ref'd)(defendant in possession of multiple stolen items without title documentation or receipt); *Robinson*, 728 S.W.2d at 863 (defendant in possession of other stolen goods at the time stolen items alleged in indictment found in his possession). The State also put on evidence through the complaining witnesses that identified the property found in the Morales' possession as the

complaining witnesses' property, and the Moraleses did not have their consent to be in possession of the property.

The jury charge provided for conviction as a principal or a party to the crime. The jury need only have found that Appellant, with the intent to promote or assist that the commission of the theft, solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense to find her guilty as a party to the crime. TEX.PENAL CODE ANN. § 7.02(a)(2). There was evidence that allowed the jury to infer that Appellant knew the items were stolen, and she allowed the items to be stored at her residence. The jury could have reasonably concluded that Appellant was knowingly soliciting, encouraging, directing, aiding, or attempting to aid an another person to commit the offense. Given all the evidence discussed above and viewing it in a light most favorable to the verdict, we find that a rational jury could have found the essential elements of the crime as alleged beyond a reasonable doubt. After a neutral review of all the evidence, we do not find the verdict to be so against the great weight and preponderance of the evidence or manifestly wrong and unjust. Appellant's Issues One and Two are overruled.

In Issues Three and Four, Appellant challenges the sufficiency of evidence in law and fact as to the value of the stolen property. However, Appellant fails to cite to any legal authority supporting her position, and as such, the issues are improperly briefed and present nothing for appellate review. TEX.R.APP.P. 38.1(h). This requirement applies to sufficiency complaints. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex.Crim.App. 1997). Issues Three and Four are overruled.

In Issues Five through Nine, Appellant contends the trial court erred in its handling of a question from the jury regarding the nine defendants who received a directed verdict. In Issue

Five, Appellant argues the court committed egregious error by failing to instruct the jury that the nine other defendants had been acquitted, and thus could not be considered as principals or parties to the remaining defendants. In Issue Six, Appellant argues the trial court deprived her of her rights to due process by failing to inform the jury that the other defendants had been acquitted. In Issue Seven, Appellant argues the trial court erred in not instructing the jury that the nine other defendants had in fact been acquitted. In Issue Eight, Appellant argues the court erred in failing to answer the jury's question as to whether the other defendants had engaged in a plea bargain. In Issue Nine, Appellant argues that the trial court erred in instructing the jury to only consider the evidence introduced at trial in answer to the jury's question.

The Code of Criminal Procedure regulates communications between the court and jurors during deliberations. *See* TEX.CODE CRIM.PROC.ANN. art. 36.27 (Vernon 2006). Once the jury is deliberating, the trial court can give additional jury instructions in writing with the defendant and his counsel present, to the extent possible, in order to make objections. *Id*. If the request from a jury for additional instructions is not proper, the court should refer the jury to the court's charge. *See Gamblin v. State*, 476 S.W.2d 18, 20 (Tex.Crim.App. 1972). Review of a trial court's response to a jury note is reviewed in the same manner as regular charge practices. *See* TEX.R.CIV.P. 286; W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. 47, 202 (2006). Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994), *citing Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). First, we determine if there is any error in the charge. If we find error to be present, we must then evaluate whether sufficient harm resulted to require reversal. *Abdnor*, 871 S.W.2d at 731-32. If there has been an objection made at trial, we will search only for some

harm, but when the error is urged for the first time on appeal, the appellant must show egregious harm. *Id*. at 732

> During jury deliberations, the jury sent out a note which stated:

> [T]he jury members would like to know if there was a plea bargain as to the dismissal of the rest of the defendants.

The trial court responded, over Appellants' objections, that "you are only to consider the evidence admitted in this case." Appellant opposed the answer arguing that the jurors misunderstood the trial court's comments on the granting of directed verdicts as to the other nine codefendants, the trial court should inform the jury that none of the codefendants received a plea bargain, and they could not be considered principals or parties. The State argued that such instructions would be an improper comment on the weight of the evidence.

It is generally impermissible to show that another jointly or separately indicted for the same offense has been convicted or acquitted during trial. *Walker v. State*, 530 S.W.2d 572, 573 (Tex.Crim.App. 1975); *Torres v. State*, 92 S.W.3d 911, 918 (Tex.App.--Houston [14th Dist.] 2002, pet. ref'd). The Texas Penal Code provides that in a prosecution in which the defendant's criminal responsibility is based on the law of parties, it is no defense: "that the person for whose conduct the actor is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosecution." TEX.PENAL CODE ANN. § 7.03(2). The jury charge included an instruction on the law of parties. The requested instruction that the acquitted codefendants could not be considered principals or parties would have been an incorrect statement of the law. *See Ex parte Thompson*, 179 S.W.3d 549, 553-54 (Tex.Crim.App. 2005). A trial court does not err in

refusing to submit a requested charge or instruction that is not in accordance with the law or constitutes an incorrect statement of the law. *See Traylor v. State*, 43 S.W.3d 725, 730-31 (Tex.App.--Beaumont 2001, no pet.). A trial court's response to a jury note referring them to the court's charge is not error. *See Sanchez v. State*, 243 S.W.3d 57, 67 (Tex.App.--Houston [1st Dist.] 2007, pet. ref'd); *Ash v. State*, 930 S.W.2d 192, 195-96 (Tex.App.--Dallas 1996, no pet.). In this case, the trial court responded by telling the jury to consider only the evidence admitted at trial. The dispositions of the codefendants' cases were not in evidence, and are not generally admissible or relevant. *See Beasley v. State*, 838 S.W.2d 695, 703 (Tex.App.--Dallas 1992, pet. ref'd), *cert. denied*, 510 U.S. 969, 114 S.Ct. 451, 126 L.Ed.2d 384 (1993). We find there was no error in the trial court's response to the jury note, and no error in failing to instruct the jury as to the dispositions of the codefendants. Issues Five through Nine are overruled.

In Issues Ten and Fifteen, Appellant argues that the procedure used by the trial court, where Judge Rangel composed the answers to the juries' questions and Judge Alcala ruled on the objections to the proposed answer since Judge Rangel was not present in the court, was error. However, there are no objections about this procedure in the record. These issues have not been preserved for appellate review. TEX.R.APP.P 33.1(a)(1). Issues Ten and Fifteen are overruled.

In Issues Eleven and Sixteen, Appellant contends that the court's failure to read the court's answer to the question from the jury in open court was in violation of Article 36.27 of the Texas Code of Criminal Procedure, and constituted reversible error. Again, there were no objections on this ground at trial, so Appellant has failed to preserve the issues for review. TEX.R.APP.P. 33.1(a)(1). Issues Eleven and Sixteen are overruled.

In Issues Twelve, Thirteen, and Fourteen, Appellant argues that instructing the jury that

-13-

they must continue to deliberate after the jury had stated it was deadlocked at 10-2 for conviction was error, and the court deprived Appellant of her right to a fair and impartial jury under the United States and Texas Constitutions by giving the instruction. In Issues Seventeen, Eighteen, and Nineteen, Appellant contends that the trial court erred in refusing to allow the jury to recess for the night after their written request to do so following the court's instruction to continue deliberating, and such refusal deprived her of her right to a fair and impartial jury under the United States and Texas Constitutions.

At the beginning of deliberations, the jury asked to take a break until 11:15 a.m., which the court allowed. The jury then sent out a note to the court at 4:07 p.m., which stated:

> We the jury have reached a conclusion as to the cause of Magdalena Morales. We are deadlocked on a 10 to 2 verdict (10 guilty, and 2 - not guilty). These two jurors who have voted not guilty have indicated that nothing will change their minds / vote with the evidence that was presented.

The trial court's proposed response was:

> You must continue to deliberate with a view of reaching a unanimous verdict in both cases.

Appellant objected and moved for the court to dismiss the jury while the State requested an *Allen*[2] charge. The trial court overruled the objection stating that "[t]he jury has not been kept together long enough," and submitted the proposed response to the jury. The jury responded to the answer at 4:35 p.m. with the following note:

> We the jury will continue to deliberate further, but we ask to conclude today and return tomorrow at 9:00 a.m. We feel that the extra time away from here might enlighten our minds to begin fresh tomorrow mornin [sic].

After discussion with counsels for Appellants and the State, during which Appellants requested

---

[2] *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

-14-

that the jury be sequestered if no verdict was reached that day, the trial court responded:

> You can take a 15-minute break and you must remain together. After the break you will continue to deliberate.

The jury sent a note at 5 p.m. that they had reached a decision as to both defendants.

Appellant argues that the trial court was placed in a "especially delicate position" regarding coercion with the jury note showing the numerical split strongly leaning toward conviction. She argues that an *Allen* charge given at this point may not have been coercive, but an *Allen* charge was not given and the instruction given had none of the ameliorative language contained in an *Allen* Charge, and as such, was a directive to a reach a unanimous verdict in favor of conviction. Appellant points us to *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965), as an example of a similar instruction. *Jenkins* held an instruction from the trial court, "[y]ou have got to reach a decision on this case," was a coercive statement. Appellant also argues the trial court increased the pressure on the jury by not allowing them to adjourn for the day, but rather instructed them to take a break and then continue deliberating.

A trial court has discretion to issue a supplemental charge to the jury or return a jury for further deliberations in an attempt to encourage them to reach a verdict. *See Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 187 (Tex.App.--Dallas 1996, no writ). It is not unusual nor an abuse of discretion for a trial court to require a jury to continue deliberating after it indicates that it is deadlocked. *Ford v. State*, 14 S.W.3d 382, 395 (Tex.App.--Houston [14th Dist.] 2000, no pet.). Once jury deliberations have begun, the trial court has the discretion to discharge the jury where it has been kept together for such time as to render it altogether improbable that it will reach a

-15-

verdict. Tex.Code Crim.Proc.Ann. art. 36.31. There are no set time limits on the jury's deliberations, and the length of time the jury may be held to deliberate is left to the sound discretion of the trial court. *See Guidry v. State*, 9 S.W.3d 133, 155 (Tex.Crim.App. 1999), *cert. denied*, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000). It is the trial court not the jury who determines when the jury will deliberate and when, or if, the deliberations will recess for the evening. *Arrevalo v. State*, 489 S.W.2d 569, 572 (Tex.Crim.App. 1973). The trial court's exercise of discretion in discharging a jury is measured by the length of time deliberated in light of the nature of the case and the evidence. *Montemayor v. State*, 55 S.W.3d 78, 87 (Tex.App.--Austin 2001, pet. ref'd).

In this case, the jury let the trial court know that they were deadlocked at ten against two for conviction. In response, the trial court instructed them to continue deliberating with the view of reaching a unanimous verdict. The instruction did not contain the ameliorative language found in an *Allen* charge, but that is because it was not an *Allen* charge. The instruction was only to continue deliberating with the view of reaching a unanimous verdict. It did not instruct the jurors to give deference to the majority view, rather it was only for the jurors to continue deliberations. The Court of Criminal Appeals has held that when a jury provides the numerical division of votes with note of a deadlock, but the trial court has not requested the information, and the court's directive to continue deliberating does not single out the minority-vote jurors, such subjective knowledge by the trial court does not render the court's response unduly coercive. *Howard v. State*, 941 S.W.2d 102, 124 (Tex.Crim.App. 1996), *cert. denied*, 535 U.S. 1065, 122 S.Ct. 1935, 152 L.Ed.2d 840 (2002). The jurors had been deliberating for approximately five hours, and the trial judge did not believe they had deliberated long enough.

-16-

While the issues in the case were not very complex, the evidence presented at trial was extensive. After being allowed a break, the jury continued to deliberate and returned a verdict a little less than thirty minutes later. As discussed above, it is in the trial court's discretion to decide when deliberations end for the day. The trial court did not believe the jurors had deliberated long enough. Cases have held that the fact a jury returned a guilty verdict shortly after being instructed to continue deliberations does not show undue coercion. *See e.g.*, *Johnson v. State*, 137 S.W.3d 777, 779-80 (Tex.App.--Waco 2004, pet. ref'd); *Montoya v. State*, 810 S.W.2d 160, 166-67 (Tex.Crim.App. 1989), *cert. denied*, 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991); *Mitchell v. State*, 482 S.W.2d 223, 226 (Tex.Crim.App. 1972)(op. on reh'g); *Potter v. State*, 481 S.W.2d 101, 106 (Tex.Crim.App. 1972). We find the instruction to the jury to continue deliberating with a view of reaching a unanimous verdict was not coercive, and as such was not error and did not deprive Appellant of her right to a fair and impartial jury under the United States and Texas Constitutions. We also find the trial court did not err in not allowing the jury to recess for the day, nor did it deprive Appellant of her right to a fair and impartial jury under the United States and Texas Constitutions. The decisions were within the discretion of the trial court, and there was no abuse of discretion in its decisions. Issues Twelve, Thirteen, Fourteen, Seventeen, Eighteen, and Nineteen are overruled.

In Issues Twenty and Twenty-One, Appellant argues that she was denied her right to effective assistance of counsel under the United States and Texas Constitutions due to counsel's failure to: (1) request a jury instruction that the nine acquitted codefendants could not be considered principals or parties to the theft offense; (2) object to the charge for omitting such instruction; (3) object to the prosecutor's argument suggesting that some of the acquitted

codefendants could have stolen the property and that Appellant was a party to the theft; (4) request a supplemental instruction that the acquitted codefendants were not principals or parties in response to the jury's question about whether the codefendants had received plea bargains; (5) object to the violation of Article 36.27 in responding to the jury's questions; (6) object to the two-judge procedure where Judge Rangel proposed the answers to the jury question and Judge Alcala ruled on the objections made to the answers; (7) object to the coercive response of the trial court to the note stating the jury was deadlocked; (8) request a complete *Allen* charge; and (9) object to the trial court not allowing the jury to recess after their request to do so.

In reviewing claims of ineffective assistance, we use the two-step analysis adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, the defendant must show that counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Under the second prong, the defendant must establish that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2964; *Jackson*, 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson*, 877 S.W.2d at 771. Failure to make the required showing of deficient performance defeats the ineffectiveness claim. *Jackson*, 877 S.W.2d at 771. Claims of ineffective assistance must be proved by a preponderance of the evidence. *Bone v. State*, 77 S.W.3d 828, 835 (Tex.Crim.App. 2002). The *Strickland* test is used to resolve cases under both the federal and state constitutions. *Hernandez v. State*, 726 S.W.2d 53, 56-7

(Tex.Crim.App. 1986).

In our review, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, and the appellant must overcome the presumption that the challenged conduct can be considered sound trial strategy. *Jackson*, 877 S.W.2d at 771. If the record is silent as to the facts, circumstances, and rationale behind an attorney's particular course of action, we are compelled to find that the defendant did not rebut the presumption that it was a reasonable one. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999).

The State argues that Appellant has failed to rebut the presumption because he did not file a motion for new trial asserting his claims of ineffective assistance of counsel, and as such, trial counsel has not been given an opportunity to explain his actions or strategic decisions. We agree. Allegations of ineffectiveness must be firmly founded in the record. *Mallet v. State*, 65 S.W.3d 59, 62-3 (Tex.Crim.App. 2001). The record is silent as to why Appellant's trial counsel took or failed to take the actions he did. Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Bone*, 77 S.W.3d at 836. Based on the record, we cannot conclude that Appellant has rebutted the presumption that counsel's decisions were based on sound trial strategy. Additionally, without proof of unprofessional conduct, we cannot determine whether Appellant was prejudiced by the representation. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Appellant has failed to meet the requirements of *Strickland*. Issues Twenty and Twenty-one are overruled.

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

January 30, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J. (Not Participating)

(Do Not Publish)